1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Bart Stephens and Duane Hutchings,

     Plaintiffs

v.

One Nevada Credit Union,

     Defendant

**2:13-cv-01712-JAD-PAL**

**Order Granting Motion for Summary Judgment**

[ECF No. 58]

Former insurance salesman Duane Hutchings sues his prior employer One Nevada Credit Union ("One Nevada") for retaliation/tortious discharge, negligent infliction of emotional distress, and gender discrmination,[1] all stemming from his 2012 termination from the company after he refused to stop working as a real estate agent on the side. One Nevada moves for summary judgment on all of Hutchings's claims, arguing that he lacks evidence to support them. I agree, grant summary judgment in One Nevada's favor, enter judgment for One Nevada and against Hutchings, and close this case.[2]

## Background

One Nevada is a locally based, federally insured, state-chartered credit union.[3] It operates two credit union service organizations: One Nevada Realty Services LLC and One Nevada Insurance Services LLC.[4] Hutchings began working as an insurance agent at One Nevada Insurance Services

---

[1] Hutchings also originally asserted a wage claim, but that claim was dismissed with prejudice. ECF No. 55. All claims brought by co-plaintiff Bart Stephens have also been dismissed with prejudice. ECF No. 72.

[2] I find this motion suitable for disposition without oral argument. L.R. 78-1.

[3] ECF No. 58-1 at ¶ 4.

[4] *Id.*

1    in August 2009.[5]  Before that, he was a real estate broker for Century 21 Realty from June 1995 to

2    April 2009.[6]  After leaving Century 21, Hutchings placed his real estate license on inactive status.[7]

3    Hutchings's real estate license was not active—and he was not selling real estate—when he applied

4    and was hired at One Nevada.[8]  He learned that One Nevada had a real estate division about one

5    month after he started working there,[9] but he did not apply to that department.[10]

6              One Nevada's employee handbook provides that employees must "avoid any situations [that]

7    might constitute a conflict of interest, or in the judgment of the Credit Union the appearance of a

8    conflict of interest, such as employment or financial interest in the business of a competitor, supplier,

9    or member."[11]  The handbook also contains an outside employment policy that requires One Nevada

10   employees to obtain written approval from a supervisor or manager before accepting outside

11   employment.[12]  Hutchings never asked for or received permission to sell real estate while employed

12   at One Nevada.[13]

13             One Nevada changed the commission structure for insurance agents like Hutchings in June

14   2011.[14]  After that change in the commission structure, on September 19, 2011, Hutchings filed a

15

16

17   _____

18   [5] ECF No. 57-3 at 72:11–13.

19   [6] *Id.* at 47:8–12.

20   [7] *Id.* at 36:24–37:4.

21   [8] *Id.* at 61:6–8.

22   [9] *Id.* at 47:24–25–48:1–3.

23   [10] *Id.* at 48:20–22.

24   [11] ECF No. 58-1 at 17.

25   [12] *Id.* at 20.  One Nevada updated its employee handbook in 2011.  The 2011 employee handbook
26   included nearly identical similar conflict-of-interest and outside-employment policies.  *Id.* at 29, 31.

27   [13] *Id.* at 62:21–63:1, 107:15–17.

28   [14] ECF No. 58-4 at 14; ECF No. 58-5 at 2–3.

complaint with the Nevada Labor Commissioner, seeking to recoup $111.40 in commissions.[15]  The
Labor Commissioner investigated and closed that case without requiring One Nevada to pay
Hutchings the commissions he was seeking or any penalties.[16]

In 2012, while still employed at One Nevada, Hutchings began selling real estate.[17]  He
closed on two properties that year and earned $48,000 in commissions.[18]  In his deposition,
Hutchings testified that he did not ask anybody at One Nevada for permission to sell real estate,[19] but
he received verbal permission to work outside of One Nevada so long as it was not on credit-union
time.[20]  He also admitted in deposition that he did not have written approval to sell real estate.[21]

Shortly after Alan Chang took over managing One Nevada's Insurance Services in July 2012,
Hutchings invited Chang to connect on LinkedIn.[22]  After accepting Hutchings's invitation to
connect, Chang noticed that Hutchings was holding himself out as a real estate agent,[23] and Chang
confronted Hutchings about his second job.[24]  Hutchings represented that his previous supervisor,
John Chatwin, had given him verbal permission to sell real estate.[25]  Chang then checked with
Michael Traficanti, the head of Human Resources, who stated that he was not aware of Hutchings's

---

[15] *Id.* at 224:12–25; ECF No. 58-5 at 5–7.

[16] ECF No. 58-1 at ¶ 16; ECF No. 58-2 at 24.

[17] ECF No. 58-3 at 43:11–17.

[18] *Id.*

[19] *Id.* at 70:8–13.

[20] *Id.* at 69:11–13.

[21] *Id.* at 107:15–17.

[22] *Id.* at 126.

[23] ECF No. 58-5 at 28.

[24] *Id.* at 35:20–25.

[25] *Id.* at 35:22–25.

second job.[26]  Traficanti and Chang agreed that they would not approve any request to allow Hutchings to sell real estate because of the potential conflict of interest with One Nevada Realty Services.[27]

Chang wrote a letter dated October 17, 2012, to Hutchings addressing Hutchings's secondary employment.[28]  In that letter, Chang reiterated One Nevada's internal policies requiring written approval to hold a second job while employed at One Nevada.  Chang also indicated that One Nevada viewed selling real estate as a potential conflict of interest and, therefore, One Nevada could not "approve any request for [him] to work as a real estate agent."[29] The letter continued: "you must decide which career path suits you moving forward."[30]  The letter gave Hutchings until November 16, 2012, to wind-up his real estate business and warned that continued real estate sales while employed at One Nevada would be deemed a violation of company policy subject to disciplinary action, including termination of his employment.[31]

On November 2, 2012, Chang sent Hutchings a follow-up email asking Hutchings if he had made a decision.  Hutchings immediately responded that, unless there was a change in pay structure, he would make no changes.[32]  Six days later, Chang met with Hutchings, and Hutchings again told Chang that he was not going to wind-down his real estate business.  Chang sent Hutchings an email to confirm that Hutchings had chosen to continue to sell real estate and that Hutchings would be separated from his employment at One Nevada as a result.[33]  Hutchings responded by stating that

---

[26] ECF No. 58-1 at ¶ 18.

[27] *Id.*

[28] ECF No. 58-6 at 19.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 21–22.

[33] ECF No. 58-2 at 29–30.

Chang's understanding of their conversation was correct.[34]  One Nevada terminated Hutchings four days later for violating the company's outside-employment policy.[35]

Hutchings filed suit ten months later, asserting three claims: (1) retaliation in violation of Nevada state law and the federal Fair Labor Standards Act ("FLSA"), (2) negligent infliction of emotional distress ("NIED"), and (3) gender discrimination in violation of Nevada state law and Title VII.[36]  Hutchings alleges that he was retaliated against and wrongfully terminated because he complained about his commission pay.[37]  Hutchings also alleges that he received disparate treatment because *he* was terminated for selling real estate, but female employees who had second jobs as real estate agents were not terminated.[38]  Hutchings claims that these actions have caused him severe emotional distress, including "fear of embarrassment, fear of being homeless, anxiety, depression, [and] humiliation."[39]

One Nevada moves for summary judgment, arguing that Hutchings's FLSA retaliation claim fails because Hutchings never filed a complaint nor instituted any proceeding under the FLSA.[40]  One Nevada argues that it is also entitled to summary judgment on Hutchings's state-law tortious discharge claim because Hutchings lacks evidence to show that he was fired for filing his commission complaint with the Nevada Labor Commissioner.[41]  One Nevada argues that it is also entitled to summary judgment on Hutchings's NIED claim because this claim is preempted by Nevada's worker compensation system, and Hutchings lacks evidence to show that he suffered

---

[34] *Id.* at 29.

[35] ECF No. 58-2 at 26.

[36] Hutchings initially asserted a wage claim that was dismissed with prejudice.  ECF No. 55.

[37] ECF No. 37 at ¶¶ 17, 33–35.

[38] *Id.* at ¶¶ 46–47.

[39] *Id.* at ¶¶ 37–38.

[40] ECF No. 58 at 3.

[41] *Id.*

1  severe emotional distress.  Finally, One Nevada argues that Hutchings's gender-discrimination claim

2  fails because he lacks evidence to show that any similarly situated female employees were treated

3  more favorably.[42]

**Discussion**

5  **A.    Summary-Judgment Standards**

6           Summary judgment is appropriate when the pleadings and admissible evidence "show there

7  is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

8  law."[43]  When considering summary judgment, the court views all facts and draws all inferences in

9  the light most favorable to the nonmoving party.[44]  If reasonable minds could differ on material facts,

10  summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts

11  are undisputed, and the case must then proceed to the trier of fact.[45]

12          If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of

13  material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts

14  showing that there is a genuine issue for trial."[46]  The nonmoving party "must do more than simply

15  show that there is some metaphysical doubt as to the material facts"; he "must produce specific

16  evidence, through affidavits or admissible discovery material, to show that" there is a sufficient

17  evidentiary basis on which a reasonable fact finder could find in his favor.[47]  The court only

18

19

---

20  [42] *Id.* at 4.

21  [43] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

22
     [44] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).
23

24  [45] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

25  [46] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

26
     [47] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME*
27  *Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.  The court may not
     grant a motion for summary judgment by default.  *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th
28  Cir. 2013).

considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[48]

As One Nevada points out in its reply, the bulk of Hutchings's exhibits are not properly authenticated.[49]  I therefore decline to consider Hutchings's unauthenticated exhibits 1, 2, 3, 4, 7, 8, and 10.[50]

**B.      One Nevada is entitled to summary judgment on Hutchings's retaliation/tortious discharge claim.**

Hutchings alleges that One Nevada terminated him in retaliation for exercising his right to complain about his pay, in violation of the FLSA and Nevada public policy.[51]  One Nevada argues that Hutchings cannot state a claim for retaliation under the FLSA because his complaint with the Nevada Labor Commissioner did not relate to the FLSA, which requires employers to pay minimum wage and overtime.  One Nevada argues that Hutchings's claim also fails under a tortious-discharge theory because he lacks evidence to show that he was terminated for filing his complaint with the Nevada Labor Commissioner.[52]  Hutchings responds that there was no conflict of interest and "the only reason [he] got fired was because he filed that complaint with the Labor Commissioner."[53]

The only wage complaint that Hutchings filed while employed at One Nevada was his 2011 complaint with the Nevada Labor Commissioner for $111.40 in commission pay.[54]  Thus, One

---

[48] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[49] ECF No. 73.

[50] I consider exhibit 4, which is a screenshot from the Nevada Real Estate Division's website showing Hutchings's active real estate licenses because Hutchings's licenses are a matter of public record, and One Nevada does not question this document's authenticity.  I also consider exhibits 6 and 9 because these exhibits were properly authenticated by One Nevada in its motion for summary judgment.  Hutchings also fails to comply with this district's local rules, which require a concise statement of undisputed material facts.  L.R. 56-1.  His entire, counseled opposition consists of just three pages.  *See* ECF No. 67.

[51] ECF No. 37 at ¶¶ 34–35.

[52] ECF No. 58.

[53] ECF No. 67 at 4.

[54] ECF No. 58-1 at ¶ 17.

1   Nevada is correct that Hutchings cannot state a retaliation claim under the FLSA because he never

2   filed a complaint relating to minimum wage or overtime pay.[55]

3          Hutchings's claim also fails under a tortious-discharge theory.  He contends that his real

4   estate business did not create a conflict of interest because he had a business broker's license, and the

5   President of Operations for One Nevada testified at his deposition that One Nevada Realty Services

6   did not have a business broker's license.[56]  Therefore, he was really fired for his complaint with the

7   Nevada Labor Commissioner, not a conflict of interest.[57]  To prevail on his tortious-discharge claim,

8   Hutchings must show that his complaint was the proximate or actual cause for his termination.[58]  But

9   Hutchings offers no evidence to tie his June 2011 complaint with the Nevada Labor Commissioner

10  to his November 2012 firing.  Further, the record reflects that he holds a business broker's license *in*

11  *addition to* his residential broker salesperson license,[59] which undermines his conclusory argument

12  that "there was not any conflict" simply because One Nevada does not hold a business broker's

13  license.[60]  Meanwhile, One Nevada offers evidence to show that Hutchings was fired for his real

14  estate business—not the complaint—and Hutchings offers no evidence to show that the proffered

15  reason for his termination was pretextual.  I find that Hutchings's tortious-discharge claim is

16  "factually unsupported" and "so one-sided that [One Nevada] must prevail as a matter of law."[61]  I

17  therefore grant summary judgment in One Nevada's favor on Hutchings's retaliation/tortious

18  discharge claim.

19

20

---

21  [55] 29 U.S.C. § 215(a)(3) (prohibiting employers from discharging or discriminating against an

22  employee for filing a complaint "*related to this chapter*") (emphasis added).

23  [56] ECF No. 67-5 at 24–25.

24  [57] ECF No. 67 at 4.

25  [58] *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1320 (Nev. 1998).

26  [59] ECF No. 67-4 at 2.

27  [60] ECF No. 67 at 4.

28  [61] *Celotex Corp.*, 477 U,S. at 323–24.

1
2
**C.    One Nevada is entitled to summary judgment on Hutchings's NIED claim because Hutchings lacks evidence to show that he suffered severe emotional distress.**

3    Hutchings alleges that he has suffered "embarrassment, fear of being homeless, anxiety,

4  depression, and humiliation" because of his termination from One Nevada.[62]  One Nevada argues

5  that it is entitled to summary judgment on Hutchings's NIED claim because it is preempted by the

6  Nevada Industrial Insurance Act ("NIIA") and Hutchings has not shown that he suffered physical

7  injury.[63]  Hutchings responds that the NIIA's exclusive-remedy provision does not apply to him and

8  that he has suffered increased blood pressure as a result of his emotional distress.[64]

9    To prevail on an NIED claim in Nevada, a plaintiff must present "proof of 'serious emotional

10 distress' causing physical injury or illness."[65]  Even if increased blood pressure were sufficient to

11 satisfy the physical-injury requirement,[66] Hutchings offers no admissible evidence to show that his

12 blood pressure increased at all, let alone as a result of his firing.  Because Hutchings lacks evidence

13 to show that he suffered severe emotional distress, I grant summary judgment in One Nevada's favor

14 on Hutchings's NIED claim.

15
16
**D.    One Nevada is entitled to summary judgment on Hutchings's gender-discrimination claim because he lacks evidence to show that similarly situated female employees were treated more favorably.**

17    Hutchings alleges that One Nevada discriminated against him based on his gender, in

18 violation of Nevada state law and Title VII.[67]  He alleges that One Nevada fired him for having a

19 second job selling real estate, but that females who had second jobs as real estate agents were not

20
21
22 [62] ECF No. 37 at ¶¶ 37–38.

23 [63] ECF No. 58 at 18.

24 [64] ECF No. 67 at 4.

25 [65] *Olivero v. Lowe*, 995 P.2d 1023, 1026 (Nev. 2000) (internal citation omitted).

26
27 [66] *See Ainsworth v. Newmont Min. Corp.*, 2012 WL 987222 (Nev. 2012) (holding stress, sleeplessness, and loss of appetite were insufficient to show severe emotional distress).

28 [67] ECF No. 37 at ¶ 48.

harassed or terminated.[68]  One Nevada moves for summary judgment, arguing that Hutchings lacks evidence to show that female One Nevada employees with second jobs selling real estate were treated more favorably.  Hutchings responds that he has located a female employee who was treated more favorably: Barbara Higgins.[69]  He indicates that he deposed Higgins, and that she "has lied and perjured herself" and has the "potential" to be in conflict with One Nevada "because she has no commercial license, [so] she can give referrals and she is in direct conflict and we guess she does not care."[70]

To prevail on this claim, Hutchings must show that females who were similarly situated to him were treated more favorably.[71]  Higgins testified at her deposition that she has a real estate license, but that she has never sold real estate while working at One Nevada.[72]  She further testified that One Nevada asked her if her license was active, and she said no.[73]  Because the evidentiary record reflects that Higgins never sold real estate while employed at One Nevada, her testimony does not establish that she is similarly situated to Hutchings, and there is no genuine issue of fact to preclude summary judgment on Hutchings's gender-discrimination claim.

---

[68] *Id.* at ¶ 47.

[69] ECF No. 67 at 3.

[70] *Id.*

[71] *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802 (1973).

[72] ECF No. 67-9 at 2.  Hutchings did not properly authenticate Higgins's deposition transcripts.  But because One Nevada properly authenticated excerpts of these transcripts in its motion for summary judgment, I will consider Hutchings's exhibit.

[73] *Id.* at 3.

**Conclusion**

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that **One Nevada's motion for summary judgment [ECF No. 58] is GRANTED.**  The Clerk of Court is directed to enter judgment for One Nevada Credit Union and against Duane Hutchings and CLOSE THIS CASE.

Dated this 8th day of June, 2016.

_____
Jennifer A. Dorsey
United States District Judge